IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

Civil Action No.:

UNITED STATES SECURITIES
AND EXCHANGE COMMISSION,

                Plaintiff,                    Case No. 18-cv-01063-JHR-SCY

                v.

THOMAS H. LAWS,

                Defendant,

and

THL FINANCIAL SERVICES CORPORATION,

                Relief Defendant.

---

# COMPLAINT

---

      Plaintiff United States Securities and Exchange Commission ("Commission" or "SEC") alleges as follows against Defendant Thomas H. Laws  ("Laws") and Relief Defendant THL Financial Services Corporation ("THL"):

## I.   SUMMARY OF THE ACTION

1.      This SEC enforcement action concerns the misappropriation of at least $1.1 million of investor funds by Laws, the former chief executive officer of Santa Fe Gold Corporation ("Santa Fe" or the "company").

2.      Santa Fe, a small mining company based in Albuquerque, New Mexico, is a public company quoted on OTC Link operated by OTC Markets Group.  After emerging from bankruptcy in June 2016 without assets, Santa Fe raised approximately $6.8 million from the sale of unregistered securities.

3.      From at least August 2016 through February 2018, Santa Fe transferred directly to Laws and THL approximately $1.1 million of investors' funds for various corporate purposes, including the purchase of a silver mine, the acquisition of mining claims, the purchase of mining equipment, and for third party services to the company.

4.      Rather than use the funds for corporate purposes, Laws misappropriated these funds and attempted to hide his theft by fabricating documents, including by forging vendor invoices, agreements, bank records, communications, and signatures.

5.      In September 2018, after Santa Fe discovered a portion of Laws' misappropriation and confronted him, he did not provide an explanation for his conduct, but he agreed to repay the funds and executed a promissory note to Santa Fe in the amount of $930,000.

6.      The promissory note has matured, but Laws has repaid only $375,000.

7.      After the note was executed, the company identified approximately $170,000 of additional misappropriated investor funds, bringing the total at issue to at least $1.1 million.

8.      At present, Laws has not repaid or accounted for at least $725,000 of investor funds.

## II.    SUMMARY OF VIOLATIONS

9.    As a result of the conduct described herein, Laws has violated, and, unless restrained and enjoined, will continue to violate Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)] and Sections 10(b) and 13(b)(5) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78j(b) and 78m(b)(5)] and Rules 10b-5, 13a-14, 13b2-1 and 13b2-2 thereunder [17 C.F.R. §§ 240.10b-5,  240.13a-14, 240.13b2-1, and 240.13b2-2].  As a result of the conduct described herein, Laws has aided and abetted Santa Fe's violation of, and, unless restrained and enjoined, will continue to aid and abet the violation of Sections 13(a) and 13(b)(2) of the Exchange Act [15 U.S.C. §§ 78m(a) and 78m(b)(2)] and Rules 12b-20, 13a-1, and 13a-13 thereunder [17 C.F.R. §§ 240.12b-20, 240.13a-1, & 240.13a-13].

## III.    JURISDICTION AND VENUE

10.    The SEC brings this action pursuant to authority conferred on it by Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)] and Sections 21(d) and 21(e) of the Exchange Act [15 U.S.C. §§ 78u(d) and 78u(e)] to restrain and enjoin the Defendant from engaging in the acts, practices, and courses of business described in this Complaint and acts, practices, and courses of business of similar purport and object.  The SEC seeks a permanent injunction, disgorgement of ill-gotten gains derived from the conduct alleged in the Complaint plus prejudgment interest thereon, and third-tier penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. §§ 78u(d)(3)].  The SEC further seeks an order permanently prohibiting Laws from acting as an officer or director of any public company, prohibiting Laws from engaging in any offering of a penny stock, and equitable disgorgement against Relief Defendant.

11.     This Court has jurisdiction over this action pursuant to Section 22(a) of the

Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa.  In

connection with the transactions, acts, practices, and courses of business described in this

Complaint, Defendant, directly and indirectly, made use of the means or instrumentalities of

interstate commerce, of the mails, or of the means and instruments of transportation or

communication in interstate commerce.

12.     Venue lies in this Court pursuant to Section 22(a) of the Securities Act [15 U.S.C.

§ 77v(a)] and Section 27(a) of the Exchange Act [15 U.S.C. § 78aa(a)] and 28 U.S.C.

§ 1391(b)(2).  Defendant Laws resides in Silver City, New Mexico.  THL is a New Mexico

corporation with its principal place of business in Silver City, New Mexico.  In addition, many of

the acts and practices described in this Complaint occurred in the District of New Mexico and

Santa Fe is based in Albuquerque, New Mexico.

## IV.     DEFENDANT

13.     **Thomas H. Laws,** age 61, is a resident of Silver City, New Mexico.  Mr. Laws

joined Santa Fe in August 2016, and served as its Chief Executive Officer ("CEO") until

September 24, 2018, when he was terminated.  Mr. Laws has also served as a director of Santa

Fe since August 2016.  Mr. Laws has been a certified public accountant in the State of New

Mexico since approximately 1987.

## V.     RELIEF DEFENDANT

14.     **THL Financial Services Corporation** is a New Mexico corporation with its

principal place of business in Silver City, New Mexico.  Laws appears to be the owner, operator,

and registered agent of THL and controls at least one bank account in THL's name.  Upon

information and belief, at Laws' direction, and for no recognizable consideration, funds raised

from Santa Fe investors were transferred to at least one THL bank account.  THL has no legitimate claim to such funds.

## VI.    FACTS

**A.    Santa Fe Transferred Approximately $1.1 Million to Laws For Business Purposes.**

15.    Santa Fe emerged from bankruptcy with no assets in June 2016.

16.    Laws was appointed to Santa Fe's board of directors and made CEO on August 1, 2016.  He and Frank Mueller, Santa Fe's Chief Financial Officer ("CFO"), served as Santa Fe's management team until Laws was terminated on September 24, 2018, for the conduct alleged herein.

17.    Laws represented that, on behalf of Santa Fe, he could acquire and develop various mining claims in and around the Silver City, New Mexico area.

18.    Silver City, where Laws resides, was founded as a mining town and significant mining operations remain in the area.

19.    Laws told Mueller that he could negotiate better prices for mining claims, equipment, and services if individuals in the area believed that Laws was not acquiring them on behalf of a corporation, and therefore Santa Fe should advance or transfer funds to Laws or to THL rather than pay the sellers or vendors directly.

20.    Laws represented to Mueller that he would retain at his offices in Silver City the documentation related to purchases he made on behalf of Santa Fe – invoices, agreements, etc. – and then transmit them to the company and its auditors, as necessary, at the fiscal year-end. Mueller agreed to this arrangement.

21.    From approximately August 2016 through February 2018, Santa Fe advanced or transferred to Laws various amounts for corporate purposes, totaling approximately $1.1 million.

22.     Laws typically emailed Mueller with each separate request, stating the purpose for the funds and the amount needed.  Mueller then caused the company to issue checks or wires for the requested amounts, and deposited the funds into bank accounts in the name of Laws and/or other bank accounts controlled by Laws in the name of the Relief Defendant, THL.

**B.     Santa Fe Discovered That Laws Had Misappropriated Investors' Funds.**

23.     In approximately mid-2018, Santa Fe's independent auditor sought documentation in connection with its audit work on Santa Fe's June 30, 2017, fiscal year-end audit.

24.     In response to the auditors' requests for documentation, Laws forwarded to Mueller various invoices and agreements purportedly supporting Laws' original email requests for the transfer or advance of funds.

25.     Mueller in turn provided this documentation to the auditor.

26.     Laws' largest request for funds related to Santa Fe's acquisition of the "Alhambra" silver mine near Silver City, New Mexico.

27.     In 2017, Laws was negotiating with the Alhambra mine seller and he sought an initial down payment of $500,000 from Santa Fe.

28.      In April 2017, per Laws request, Mueller transferred $500,000 to Laws for the Alhambra mine down payment.

29.      On September 14, 2017, the company announced its purchase of the Alhambra mine for $3 million in a press release.

30.      Thereafter, Mueller, on behalf of Santa Fe, made installment payments directly to the seller of the Alhambra mine for the balance of the purchase price.

31.     In about mid-2018, Mueller understood from Laws that the $500,000 transferred

in April 2017, had not yet been paid to the Alhambra mine seller, but instead remained escrowed in an attorney's trust account.

32.     Laws explained to Mueller that the attorney had died before the funds could be transferred to the Alhambra mine seller, that a "special master" was overseeing the deceased attorney's affairs, and that the funds were still tied up as a result.

33.     In early June 2018, in connection with the audit, Laws provided Mueller and the auditor with an email from the purported "special master," an attorney and State Court District Judge in Silver City, to corroborate his story.

34.     Laws also provided Mueller and the auditor with a bank statement purportedly showing the April 2017 transfer of funds to the attorney trust account.

35.     In approximately mid-June 2018, Laws told Mueller that the special master had finally transferred the funds back to Laws' bank account, but that the bank had temporarily frozen the funds because it was a large transfer.

36.     Mueller initially believed Laws, but as more time went by without return of the funds, and as Laws provided additional excuses for the delay, Mueller became suspicious.

37.     In about July 2018, Mueller caused Santa Fe to engage an attorney to assist with the return of the company's funds.  In August 2018, Mueller called the special master directly, who explained that he was not a special master, and that the attorney Laws claimed to have initially escrowed the funds with in April 2017, had in fact died in 2012.

38.     Thus, the email from the special master provided by Laws, as well as the bank records showing the April 2017 transfer from Laws to the deceased attorney's trust account, appear to be forged.

39.     Mueller then contacted several vendors identified on the invoices provided to him

by Laws.  The vendors told Mueller that they did not provide the services reflected on the invoices, or receive the compensation reflected therein from Santa Fe.

40.     Mueller initially estimated that Laws had misappropriated at least $930,000 of funds, and with counsel's assistance, Santa Fe hired a private investigator to confront Laws.

41.     Although Laws provided no explanation to the investigator for his conduct, on September 19, 2018, he executed a promissory note agreeing to repay $930,000 to the company by September 30, 2018.

42.     The company has since identified approximately $170,000 of additional funds misappropriated by Laws.

43.     Laws repaid $375,000 under the promissory note, but has breached the agreement by failing to repay the full $930,000 by September 30, 2018.

44.     Santa Fe terminated Laws on September 24, 2018, and on October 1, 2018, filed a Form 8-K with the SEC disclosing Laws' termination, the promissory note, and that the company's previously filed financial statements can no longer be relied upon.

**C.      Laws Made False, Fraudulent, and Material Misrepresentations and Omissions in Connection with Santa Fe's Offer and Sale of Stock.**

45.     From June 2016 through May 2018, Santa Fe raised approximately $6.8 million through the sale of unregistered stock in order to execute on its business plan to acquire, explore, and develop mining assets, and to create shareholder value.

46.     In October 2017, the company filed with the SEC a Form D, signed by Laws, indicating that the first sale in the stock offering occurred on June 27, 2016.

47.     Further, the subscription agreement for the private offering stated that the sales were made under a 2009 prospectus available on EDGAR, the SEC's publicly-available electronic filing system.

48.     Under the 2009 prospectus, Santa's Fe's prospective SEC filings, with the exception of filings on Form 8-K, were incorporated by reference into the prospectus.

49.     Santa Fe is a public company, and its stock is quoted on the OTC Link operated by OTC Markets Group.

50.     Santa Fe's stock is a "penny stock" as defined by Section 3(a)(51) of the Exchange Act [15 U.S.C. § 78c(a)(51)] and Rule 3a51-1 thereunder [17 C.F.R. § 240.3a51-1].

51.     Laws signed and certified Santa Fe's Form 10-Q for the period ended September 30, 2016 (filed December 18, 2017), Form 10-Q for the period ended December 31, 2016 (filed January 25, 2018), Form 10-Q for the period ended March 31, 2017 (filed March 26, 2018), and Form 10-K for the year ended June 30, 2017 (filed July 5, 2018).  Each of these SEC filings falsely stated that:

        a.     The cash proceeds from the sale of securities were "utilized" or "used" for "working capital" by the company; and

        b.     "the Company delivered $500,000 to be held in escrow pending, and to be applied as part of the purchase price" for the Alhambra mine.

52.     Santa Fe's Form 10-K for the year ended June 30, 2016 (filed November 17, 2017), which was signed and certified by Laws, also misrepresented that "the Company delivered $500,000 to be held in escrow pending, and to be applied as part of the purchase price" for the Alhambra mine.

53.     Because Laws misappropriated at least $1.1 million of investor funds, Laws knew, or was reckless in not knowing, that those funds were not in fact used for "working capital" for corporate purposes as represented in Santa Fe's Forms 10-Q and 10-K.

54.     Laws also knew, or was reckless in not knowing, that due to his misappropriation of funds, Santa Fe's Forms 10-Q for the periods ended September 30, 2016, December 31, 2016,

and March 31, 2017, as well as the company's Form 10-K for the year ended June 30, 2017, each omitted accurate disclosure of the company's uses of investors' funds.

55.     For the same reasons, the financial statements in Santa Fe's Forms 10-Q for the periods ended September 30, 2016, December 31, 2016, and March 31, 2017, as well as the Form 10-K for the year ended June 30, 2017, inaccurately disclosed, for instance, the company's "equipment assets" and "exploration and other mine related costs."

56.     The $500,000 purported escrow deposit totaled over 50% of Santa Fe's current assets, as reported on its balance sheet for the year ended June 30, 2017.

57.     Laws' misrepresentations and omissions as to use of proceeds were material to Santa Fe investors because the investors believed that their funds were being used to purchase a mine, mining claims, mining equipment, and for third party services to the company, not being misappropriated by Laws.

      **D.**    **Laws Engaged in a Scheme and Fraudulent Practices or Courses of Business That Defrauded Santa Fe Investors.**

58.     Laws has engaged in a scheme to defraud Santa Fe investors from approximately August 2016 through the present.

59.     Laws has engaged in numerous practices or courses of business that defrauded Santa Fe investors, including, but not limited to:

      a.     Signing and certifying Santa Fe's SEC filings, incorporated by reference into Santa Fe's 2009 prospectus, which made material misrepresentations and omissions as to the use of investors' funds as alleged herein;

      b.     Providing false oral and written explanations to Santa Fe's CFO, Mueller, for initial fund transfers by Santa Fe to Laws' personal bank accounts or the bank accounts of THL that he controlled;

      c.     Providing subsequent false oral and written explanations to Mueller regarding Laws' uses of investor funds;

d.   Providing forged, falsified or altered documents to Mueller falsely indicating that investor funds had been used to purchase an interest in a mine, mining claims, equipment, or to pay third parties for services provided to Santa Fe; and

e.   Providing forged, falsified or altered documents to Santa Fe's outside auditor, falsely indicating that investor funds had been used to purchase an interest in a mine, mining claims, equipment, or to pay third parties for services provided to Santa Fe.

**E.    Relief Defendant Received Ill-Gotten Gains.**

60.    Relief Defendant THL received proceeds from Laws' fraud and has no legitimate claim to those proceeds.

61.    On information and belief, Relief Defendant acted as a mere nominee of Laws and holds assets that belong to, and are controlled by, Laws.

**VII.    CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**

**Fraud in the Offer or Sale of Securities**
**Violations of Securities Act Section 17(a) [15 U.S.C. §§ 77q(a)]**
**(Laws)**

62.    Paragraphs 1 through 61 are re-alleged and incorporated herein by reference.

63.    Defendant Laws directly or indirectly, in the offer and sale of securities, by use of the means or instruments of transportation or communication in interstate commerce, or of the mails:  (a) employed a device, scheme or artifice to defraud with scienter; (b) obtained money or property by means of untrue statements of material fact or by omitting to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in transactions, practices, or courses of business that operated or would operate as a fraud or deceit upon the purchasers of such securities.

64.     By reason of the foregoing, Defendant Laws violated, and unless enjoined will continue to violate, Section 17(a) of the Securities Act [15 U.S.C. §§ 77q(a)].

### SECOND CLAIM FOR RELIEF

**Fraud in the Purchase or Sale of Securities**
**Violations of Exchange Act Section 10(b) and Rule 10b-5**
**[15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5]**
**(Laws)**

65.     Paragraphs 1 through 61 are re-alleged and incorporated herein by reference.

66.     Defendant Laws, directly or indirectly, with scienter, by use of the means or instruments of interstate commerce, or of the mails, or of a facility of national securities exchange, in connection with the purchase or sale of a security:  (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices or courses of business which operated or would have operated as a fraud or deceit upon any person.

67.     Defendant Laws, directly or indirectly, with scienter, by use of the means or instruments of interstate commerce, or of the mails, or of a facility of national securities exchange, in connection with the purchase or sale of a security:  (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices or courses of business which operated or would have operated as a fraud or deceit upon any person.

68.     By reason of the foregoing, Defendant Laws violated, and unless enjoined will continue to violate, Section 10(b) and Rule 10b-5 of the Exchange Act [15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5].

**THIRD CLAIM FOR RELIEF**

**False SEC Filings – Aiding and Abetting Santa Fe's**
**Violations of Section 13(a) of the Exchange Act and**
**Rules 12b-20, 13a-1, and 13a-13 [15 U.S.C. § 78m(a) and**
**17 C.F.R. §§ 240.12b-20, 240.13a-1 and 240.13a-13]**
**(Laws)**

69.     Paragraphs 1 through 61 are hereby realleged and incorporated by reference.

Santa Fe, which was an issuer of securities registered pursuant to Section 12 of the Exchange

Act, filed materially false and misleading quarterly and annual reports with the SEC that made

untrue statements of material fact or omitted to state material facts necessary in order to make the

statements made, in light of the circumstances under which they were made, not misleading, in

violation of Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1, and 13a-13.

70.     By engaging in the conduct described above, Laws aided and abetted the

reporting violations of Santa Fe, in that he knowingly or recklessly provided substantial

assistance to Santa Fe in committing these reporting violations.

71.     By reason of the foregoing, Laws aided and abetted, and unless restrained and

enjoined will in the future aid and abet, Santa Fe's violations of Section 13(a) of the Exchange

Act and Rules 12b-20, 13a-1, and 13a-13.

**FOURTH CLAIM FOR RELIEF**

**False Books and Records – Aiding and Abetting Thornburg's**
**Violation of Section 13(b)(2) of the Exchange Act [15 U.S.C. § 78m(b)(2)]**
**(Laws)**

72.     Paragraphs 1 through 61 are hereby realleged and incorporated by reference.

73.     By engaging in the conduct described above, Santa Fe, in violation of Section

13(b)(2) of the Exchange Act, failed to make and keep books, records, and accounts, which, in

reasonable detail, accurately and fairly reflected the company's transactions and dispositions of its assets and failed to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that transactions were recorded as necessary to permit preparation of financial statements in conformity with generally accepted accounting principles and any other criteria applicable to such statements.

74.     By engaging in the conduct described above, Laws aided and abetted Santa Fe, in that he knowingly or recklessly provided substantial assistance to Santa Fe, in committing these violations.

75.      By reason of the foregoing, Laws aided and abetted, and unless restrained and enjoined will in the future aid and abet, Santa Fe's violations of Section 13(b)(2).

### FIFTH CLAIM FOR RELIEF

**Falsified Books, Records, or Accounts –
Section 13(b)(5) of the Exchange Act and
Rule 13b2-1 [15 U.S.C. § 78m(b)(5) and 17 C.F.R. § 240.13b2-1]
(Laws)**

76.     Paragraphs 1 through 61 are hereby realleged and incorporated by reference.

77.     By engaging in the conduct described above, Laws knowingly circumvented or knowingly failed to implement a system of internal accounting controls to assure that Santa Fe's financial statements were prepared in conformity with GAAP or knowingly falsified or caused to be falsified books, records or accounts of Santa Fe.

78.     By reason of the foregoing, Laws violated and unless restrained and enjoined will in the future violate Section 13(b)(5) of the Exchange Act and Rule 13b2-1.

## SIXTH CLAIM FOR RELIEF

**Deceit of Auditors – Rule 13b2-2 of the Exchange Act**
**[17 C.F.R. § 240.13b2-2]**
**(Laws)**

79.     Paragraphs 1 through 61 are hereby realleged and incorporated by reference.

80.     By engaging in the conduct described above, Laws made or caused to be made materially false or misleading statements to an accountant in connection with audits, reviews or examinations of Santa Fe's financial statements or in the preparation or filing of Santa Fe's documents or reports required to be filed with the SEC; or omitted to state, or caused another person to omit to state, material facts necessary in order to make statements made, in light of the circumstances under which such statements were made, not misleading, to an accountant in connection with audits, reviews or examinations of financial statements or in the preparation or filing of Santa Fe's documents or reports required to be filed with the SEC.

81.     By reason of the foregoing, Laws violated and unless restrained and enjoined will in the future violate Rule 13b2-2 of the Exchange Act.

## SEVENTH CLAIM FOR RELIEF

**False Certifications- Rule 13a-14 of the Exchange Act**
**[17 C.F.R. § 240.13a-14]**
**(Laws)**

82.     Paragraphs 1 through 61 are hereby realleged and incorporated by reference.

83.     Laws signed Sarbanes-Oxley Section 302 certifications in connection with Santa Fe's Forms 10-Q for the periods ended September 30, 2016, December 31, 2016, and March 31, 2017, and Forms 10-K for the years ended June 30, 2016 and June 30, 2017, which state that the signing officer has reviewed the report, and: (1) based on the officer's knowledge, the report does not contain any untrue statement of material fact; (2) based on the officer's knowledge, the

financial statements fairly present, in all material respects, the financial results of operations; and (3) the signing officers are responsible for establishing and maintaining adequate internal controls over financial reporting, have designed and evaluated such controls, and have disclosed any changes or weaknesses to the registrant's auditor and audit committee.  As alleged herein, Laws signed certifications that he knew or should have known were false.

84.     By reason of the foregoing, Laws violated and unless restrained and enjoined will in the future violate Rule 13a-14 of the Exchange Act.

## EIGHTH CLAIM FOR RELIEF

### Equitable Disgorgement
### (Relief Defendant THL)

85.     Paragraphs 1 through 61 are re-alleged and incorporated herein by reference.

86.     Relief Defendant obtained money, property, and assets as a result of the violations of the securities laws by Defendant, to which Relief Defendant has no legitimate claim.

87.     Relief Defendant should be required to disgorge all ill-gotten gains which inured to its benefit, including under the equitable doctrines of disgorgement, unjust enrichment and constructive trust.

## VIII.   PRAYER FOR RELIEF

**WHEREFORE**, the SEC respectfully requests that the Court:

### I.

Find that Defendant committed the violations alleged in this Complaint;

### II.

Enter an Injunction, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently restraining and enjoining the Defendant from violating the laws and rules alleged against them in this Complaint;

16

**III.**

Order that Defendant and Relief Defendant disgorge any and all ill-gotten gains, together with pre-judgment and post-judgment interest, derived from the activities set forth in this Complaint;

**IV.**

Order that Defendant pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)];

**V.**

Order that Laws be permanently prohibited from acting as an officer or director of any public company;

**VI.**

Order that Laws be permanently prohibited from engaging in any offering of a penny stock pursuant to Section 21(d)(6) of the Exchange Act [15 U.S.C. § 78u(d)(6)]; and

**VII.**

Grant such other relief as this Court may deem just or appropriate.

**<u>JURY DEMAND</u>**

Plaintiff demands a jury trial in this matter.

DATED: November 15, 2018.

Respectfully submitted,

<u>s/ *Stephen C. McKenna*</u>
Stephen C. McKenna
Attorney for Plaintiff
U.S. Securities and Exchange Commission
1961 Stout Street, Suite 1700
Denver, CO 80294-1961
(303) 844-1036
McKennaS@sec.gov